## Case No. 7,522.

JORDAN et al. v. UNION MUT. FIRE INS. CO.

[Brunner, Col. Cas. 608;[1] 21 Law Rep. 83.]

Circuit Court, D. New Hampshire. May Term, 1857.

CURTIS, Circuit Justice. The directors of this corporation were trustees, primarily for the corporation, but also for the individual members; and if they have illegally neglected and refused to exercise their powers, and such neglect and refusal has inflicted a special injury on an individual member, he may have the appropriate relief in a court of equity. Dodge v. Woolsey, 18 How. [59 U. S.] 331. Under the charter of this corporation, it was the duty of the directors to assess upon the signers of the deposit notes of the fourth class. whose policies were in existence when the plaintiffs' loss happened, and was duly notified to the company, a sum sufficient to pay that loss. This duty was not finally superseded by the refusal of the directors to admit the validity of the plaintiffs' claim. In the fair exercise of a sound discretion, the directors might rightfully omit to make an assessment to pay a loss which they thought not justly payable, until it should be decided either by arbitrators or a court of law, whether the claim was valid. But such refusal merely suspends the assessment until the necessity for it is conclusively ascertained. The directors cannot, by refusing to pay a loss, acquire the power to destroy or diminish the fund out of which the claimant is to be paid, provided his claim prove valid. And if policies expire which

1.[Reported by Albert Brunner, Esq., and here reprinted by permission.]

were running when the loss occurred and was duly notified to the company, the directors are bound to consider the claim for a loss, though litigated, as a contingent charge on the deposits made under such expired policies, and have no right to surrender the deposit notes without providing for such contingency. The defendants admit that they have not exercised their power to make an assessment to pay the loss due to the complainants, and they assign the following reasons for the omission: "And these defendants further answering say, that upon the rendition of said final judgment against said company, the directors of said company, for the time being, did not make an assessment upon the deposit notes liable to be assessed for the payment of the amount of said judgment, because there was then due to said company and assessed upon premium notes liable to be assessed for the payment of said loss of said complainants, a sum much greater than was necessary for the payment and discharge of said judgment; and the said directors hoped and believed that from the balance thus due, and assessed upon said notes at the time of the rendition of said judgment, a sum might be collected sufficient to pay and satisfy said judgment. And these defendants, Treadwell, Chandler, Fowler and Lang say, and these defendants, Gass, Carter and Stevens say, that they are informed and believe it to be true that the directors of said company have made all reasonable endeavors by suit and otherwise, to collect the same, but their efforts in this respect have been almost entirely unsuccessful. And although the said directors still retain in the hands of the treasurer of said company, a large amount of deposit notes liable to be assessed for the payment of said judgment, to wit, notes amounting in all to the sum of forty-two thousand three hundred and forty-eight dollars and forty-two cents, included in which amount is the premium note of these complainants for the sum of one hundred and seventy-six dollars, they have hitherto neglected to order an assessment thereon, for the payment of said judgment, because the said directors had good reason to believe that it would be utterly impracticable to enforce the collection of said assessments, in consequence of the makers of said notes having so long ceased to be members of said company by being insured therein, and being so scattered abroad throughout all the New England states, and for the further reasons that very many of said makers were insolvent, had deceased, or had gone to parts unknown. Under these circumstances, these defendants say that they did not believe any further assessment practicable, the said directors not conceiving themselves justified in making, or required as directors to make an assessment which they did not believe could be made available. But the said defendants, directors, say, and the said Lang saith, that

he is informed and believes that the said directors upon notice of the rendition of said final judgment against said company, informed the said complainants that a special assessment upon the notes liable to pay said judgment, might be made if said complainants desired it, and the treasurer of said company directed to pay over to said complainants such sums as he might collect of the same; but said complainants did not signify their desire that such course should be pursued by said directors."

I am of opinion that upon the proofs in this case, neither of these grounds of defence is made out. If, when the plaintiffs' judgment was recovered, an assessment adequate in amount to pay it, and which the directors believed would be available to pay it, had already been laid, they were not obliged to do more until they found such assessment would not be available for that purpose. When they did discover its inadequacy, they were bound to make a special assessment in behalf of the plaintiff. When this discovery was made, is not stated. They say their efforts "have been almost entirely unsuccessful." If they have collected any amount, why was it not appropriated towards satisfying the plaintiffs' judgment? But further; these grounds now assumed in the answer are not consistent with the letter written by the president to Mr. Cozzens, in answer to his notice of the recovery of the judgment. That letter was as follows: "Office Union M. Fire Ins. Co., Concord, N. H., Oct. 11, 1855. Benj. Cozzens, Esq.,—Sir: In reply to yours of yesterday, addressed to Mr. Lang, I will say that for the loss of Lindsey Jordan & Co., the directors of this company, believing they had no legal or just claim against it, have never ordered an assessment for that loss. The fire, for which they claim damages, occurred Jan'y 8th, 1851. All insurances in the class in which Jordan & Co. were insured run for three years; and all the policies then existing, and liable for this loss, expired in Jan'y 16, 1854. Most of the premium notes on these policies liable to be assessed, have been settled and given up to the signers—a very few of the unsettled ones remain with the company, among which is that of Jordan & Co., for $176. These are the only notes that could now be assessed to pay this loss. How much might be realized from an assessment on them, I am unable to say; but little or much, they are the only means of the company responsible for this claim. I have thus frankly stated to you the means of the company, applicable to this loss. Yours, &c., Ths. P. Treadwell." Surely, if an assessment had then been laid, which the directors expected would afford the means to pay the judgment, that was the proper time to say so. Instead of that, the president says, in effect, there are no considerable means of payment applicable to that demand. Nor do I think it is true that the sum of $42,348.42, which the answer ad-

mits was liable to assessment, was wholly unavailable for the plaintiffs' benefit, or ought to have been so treated by the directors. Precisely how much was thus available, is the proper subject of inquiry by a master. But the proofs satisfy me that enough of this fund was available, and ought to have been known to the directors to be so, to make it their clear duty to make an assessment in behalf of the plaintiffs. Nor does it appear that they waived their right to an assessment. If they had done so, it would have been difficult to have allowed the defendants the benefit of such waiver, because the president's letter of the 11th October, already quoted, did not contain a fair statement of the condition and amount of the means of the company applicable to the payment of the plaintiffs' judgment. It represents a state of things materially different from that disclosed in the answer; and still more unlike that shown by the proofs. I think the omission of the defendants to make an assessment for the payment of the plaintiffs' judgment, was the neglect of a plain duty, which has rendered them personally liable for such an amount of money towards the payment of that judgment, as an assessment, seasonably made, and enforced with due diligence, would have procured.

Let a decree be drawn up referring the cause to a master, to inquire and report what sum, applicable to the payment of the plaintiffs' loss, might, and with the use of due diligence would, thus have been raised. And in taking this account, the master is to include notes applicable to the payment of the plaintiffs' loss at the time when it occurred and was duly notified to the company, though such notes have been surrendered by the defendants, unless such surrender was made in the fair exercise of discretion, with a view to obtain all that could by due diligence be obtained from such notes.